**BELOIT POWER SYSTEMS, INC. and Kemper Insurance Companies, as Subrogee,**

v.

**HESS OIL VIRGIN ISLANDS CORPORATION, Litwin Corporation, Appellant.**

No. 83–3355.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1984.

Decided March 29, 1985.

Vincent A. Colianni (argued), Isherwood, Hunter & Colianni, Christiansted, St. Croix, V.I., for appellant, Litwin Corporation.

Britain H. Bryant (argued), Bryant, Lenahan & Eltman, Christiansted, St. Croix, V.I., for appellee, Hess Oil Virgin Islands Corporation.

Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In the companion case decided today, *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, No. 83–3354, we hold that Hess, the buyer of an electrical control panel, agreed to indemnify Beloit Power Systems, Inc., the manufacturer of the equipment, for damages Beloit paid to a worker injured during the installation. In this appeal, we address Hess' claim for indemnification from Litwin Corporation, which was hired by Hess to install the equipment. The injured worker, Norwilton Murray, was a Litwin employee who fell while he was bolting the control panel to the platform where it was to be installed, and one of the iron cross-members Beloit had attached to the open bottom of the unit to stabilize it during shipping gave way. *See Murray v. Fairbanks Morse*, 610 F.2d 149, 150–51 (3d Cir.1979).

Neither Hess nor Litwin was a party to Murray's suit against Beloit. However, in Beloit's action against Hess for indemnity and contribution, Hess joined Litwin as a third-party defendant, and both Hess and Litwin filed motions for summary judgment. The district court granted Hess' motion, holding that "Litwin will be required to indemnify [Hess] for any contribution it must make to Beloit for Norwilton Murray's injuries." *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, 561 F.Supp. 279, 287 (D.V.I.1983). The court further certified the case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

The provision for indemnity in the Hess/Litwin agreement reads:

VI.  INDEMNITY AND INSURANCE

A.  From date of Contract until Ready for Charge date, [Litwin] shall indemnify and hold [Hess] harmless from and against any and all loss, damage, injury liability and claims thereof, including claims for personal injuries, death and property damage and loss, unless caused by the sole negligence of [Hess].

. . . .

C.  [Litwin] shall, and shall cause its subcontractors to, maintain the following insurance at all times while performing work hereunder.  Such insurance shall cover, among other risks, the contractual liability assumed under Paragraph A hereof.

The district court, applying the principle that a provision purporting to indemnify a party for its own negligence must clearly and unambiguously express such an intention, *see United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed. 224 (1970), held that this indemnity provision is sufficient to require Litwin to indemnify Hess for any contribution it must make to Beloit for Murray's injuries.  The court buttressed its conclusion by noting that the indemnity provision is tied to a provision requiring the indemnitor to purchase insurance for the risks enumerated in the indemnity provision.  *Beloit*, 561 F.Supp. at 287.  This agreement, unlike that between Hess as buyer and Beloit as seller in the Hess companion case, arises in the paradigmatic context of a contractor and the owner, *see, e.g., Willey v. Minnesota Mining & Manufacturing Co.*, 755 F.2d 315 (3d Cir.1985); *Jamison v. Ellwood Consolidated Water Co.*, 420 F.2d 787 (3d Cir.1970); *Midland Insurance Co. v. Delta Lines, Inc.*, 530 F.Supp. 190 (D.S.C.1982), and hence the insurance provision does, as the district court held, manifest an intent to shift the risk to Litwin.

■  The district court held that because Beloit had already been found to be negligent in the action brought by Murray, his injury could not have been caused "by the sole negligence of [Hess]." *Beloit*, 561 F.Supp. at 287.  We agree.  In *Draper v.*

*Airco, Inc.*, 580 F.2d 91 (3d Cir.1978), relied upon by the district court, suit was brought against the general contractor (Airco) and the owner (U.S. Steel) for the death of an employee of a subcontractor (Pangborne). Both Pangborne and Airco were found to have been negligent.  Pangborne had undertaken to indemnify Airco, unless the loss was "caused solely by the negligent acts or omissions of Airco, or its employees, agents, licensees or representatives." We held that "Airco ... has a right to indemnification from Pangborne unless Airco is found to be the only negligent party." *Id.* at 101.

Litwin argues that *Draper* is inapplicable because there the indemnitor, Pangborne, had been found to be negligent, whereas here no one claims that Litwin was negligent, unless Murray's negligence can be imputed to Litwin, his employer. Litwin argues that in construing its agreement to indemnify Hess for all liabilities "unless caused by the sole negligence of [Hess]", we should look only to Hess' negligence vis-a-vis Litwin.  However, the language of the agreement does not lend itself to such an interpretation.  It unambiguously excuses Litwin from the indemnity obligation only if Hess is the sole negligent party.  Therefore, if a third party also bears some of the responsibility for the injury, the "sole negligence" provision is inapplicable.  Since the jury in the *Murray* action found Beloit liable on both the count claiming negligence and the count claiming strict liability, the loss was, at least in part, the responsibility of a party other than Hess.  The district court correctly concluded that under these circumstances, the indemnity agreement was applicable, since liability or loss was not caused "by the *sole* negligence of [Hess]."  We therefore need not reach the issue of whether Murray's negligence can be imputed to Litwin for purposes of the "sole negligence" clause.

■  The only remaining question is whether Litwin's undertaking to indemnify Hess includes the amounts that Hess is required to pay to Beloit based on the Beloit/Hess contract's indemnity provi-

sions. Hess argues that if it is required to indemnify Beloit, as we have today held it must in *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, 757 F.2d 1427 (3d Cir.1985), then this obligation flows through to Litwin, leading to what Litwin refers to as indemnity on indemnity. We find this contention untenable.

Under the indemnity agreement, Litwin agreed to hold Hess harmless from and against any and all loss, damage, injury liability and claims against Hess, but there is no provision by which Litwin assumed any contractual liability that Hess may have undertaken. Before imposing such liability on Litwin, there would have to be specific language that clearly manifested such an intent. In this regard, we agree with the holding of the court in *Dullard v. Berkeley Associates Co.*, 606 F.2d 890, 894 (2d Cir.1979), which similarly construed comparable language in an indemnity provision.

An example of language that demonstrates an unequivocal undertaking by an indemnitor to assume contractual liability undertaken by its indemnitee is afforded in our recent decision in *Willey v. Minnesota Mining & Manufacturing Co.*, 755 F.2d 315 (3d Cir.1985). There the contractor agreed to indemnify the owner (the "principal contract"), and a subcontractor agreed to indemnify the contractor expressly promising to be "bound by the terms of the aforesaid principal contract as far as applicable to this subcontract, and to assume toward the general contractor all the obligations and responsibilities that the general contractor ... assumes toward the owner." *Id.* at 318. Such language is conspicuously absent in Litwin's indemnity agreement.

*Dullard* illustrates the manner in which this issue should be approached on remand. *Dullard* involved an accident in which an employee was killed on a construction site by a falling piece of wood. Berkeley, owner and general contractor, was found 39% negligent; 400 Concrete, a subcontractor was found 35% negligent; and Castle, which had contracted to do the work 400

Concrete had agreed to perform for Berkeley, was found 26% negligent. *Dullard,* 606 F.2d at 892. Castle had agreed to indemnify 400 Concrete, which in turn had agreed to indemnify Berkeley. 400 Concrete, like Hess in the present case, sought to have Castle indemnify not only its 35% tort liability but also Berkeley's 39% liability which 400 Concrete would otherwise have to pay. The court rejected that claim, holding instead that Castle had only undertaken to indemnify Castle for the latter's own tort liability. *Id.* at 894.

In this case, therefore, Litwin will be responsible only to the extent of Hess' own tort liability, an amount as yet undetermined. We recognize this will present a somewhat anomalous situation on remand, since it will be to Hess' advantage to maximize the amount of its own negligence vis-a-vis Beloit, and thereby increase the amount of the indemnity for which Litwin will be responsible. Furthermore, Beloit, having succeeded on its claim that Hess must indemnify it in the full amount of its payment to Murray, less the contract price, no longer has an interest in the outcome of the remainder of this litigation. This is the unavoidable result of the juxtaposition of the two indemnity contracts entered into by the parties. Since neither Litwin nor Hess apparently sought to intervene in the *Murray* action, we need not speculate whether such an application would have come within Rule 24 of the Federal Rules of Civil Procedure.

Accordingly, we will affirm the district court's grant of summary judgment to Hess on the issue of indemnity insofar as it refers to indemnity for Hess' tort liability, and will remand this case for further proceedings consistent with this opinion. Each party will bear its own costs.